Mr. Solomons, whenever you're ready. Good morning. Police Court. This is a black lung case, and I think it has several significant issues in it. But first, let me address the jurisdictional question that you raised by court order a few days ago. The question, I guess, that you're asking is whether the filing of a motion for reconsideration operates in black lung claims as a stay on the time for filing appeal to this court. You cite two authorities, Brotherhood of Locomotive Engineers and BIDI-B, suggesting perhaps that there is no jurisdiction because the appeal has to be filed under Section 10C of the Administrative Procedure Act within the time allotted, notwithstanding any motions for reconsideration. There's a lot of law on this, and I think that the principal law is not ICC or BIDI-B. First of all, there's a statutory provision in the Longshore Act, 33 U.S.C. 921b-5, which directs the Benefits Review Board to write regulations about its reconsideration procedure. Benefits Review Board has written regulations describing its reconsideration procedure and defining, for purposes of the Longshore Act, the meaning of the term finality in that program. The regulations are at 20 CFR 802-406, and I can read them to you, you can read them yourself. But what the regulations very clearly and undeniably say is that the time to appeal to a court of appeals is stayed. Now, let me address the cases just briefly. So you'd have to find that regulation invalid. I don't think there's any way to do that. And Department of Labor can't ask you to, because they're not statutorily authorized to argue that one of their regulations is invalid. As far as ICC is concerned, that's a case where they held it under the Hobbs Act. And under 10C of the Administrative Procedure Act, a motion for reconsideration did not stay the time for filing an appeal. After deciding the case under the Hobbs Act, Justice Scalia went off on a flight of fancy with pages after pages of dictum about how, which suggests that 10C would absolutely prohibit the filing of a, the stay of the appeal time during the pendency of a motion for reconsideration. That was too much for the Supreme Court. In Darby v. Cisneros case some years later, it clearly repudiated all of that dictum, said so, said it was all dictum, and came up with a new rule and said that 10C of the APA, and I don't even know that 10C applies to the board, but that's not a question we really even need to reach here. Under 10C, 10C is not supposed to be a trick to mess up lawyer strategy. It's supposed to be an acknowledgment of, well, it's supposed to define the principles of exhaustion of administrative remedies. It's not a trick to mess up lawyers. What it is is it tells lawyers who are representing parties who are coming up to an appeal that the optional choices prior to an appeal, to a court of appeals or wherever it goes in the federal court system, are not required. It's not required for exhaustion. So the Supreme Court, how the Supreme Court defines 10C and how, and I think that's binding. I don't think there's any question about it. And so all we did is we selected the option, and it's perfectly permissible to do so. The regulation. And what is the option again? Oh, the option is to just go straight to the court of appeals or to try reconsideration. But the order that you're appealing is the February 25th, 2013 order, which denied the motion for reconsideration. Is that correct? Well, what our notice of appeal says is it denies the motion for reconsideration of the order of the board that preceded it. Now, the thing is you want to trick us, you want to make it into a big game. I can't stop you from doing that. But that's not what we're saying. Wait a minute, counsel. Why don't you answer NACLA's question? She's not trying to trick you into anything. I'm trying to understand what you are saying. We appealed the decision of the Benefits Review Board and the decision on reconsideration. The decision on reconsideration was on the merits. It addressed all the same issues that we had found inappropriately decided in the board's first decision. It was on the merits. And that's the February 25th, 2013 order. That's the order you're appealing? Well, no. We're appealing both that order and the underlying decision. I mean, I don't know how, I suppose we could say it differently, but it seems to me that we've been doing this for 40 years. This has never come up as an issue except in a few cases where the board had, where we had filed two motions for reconsideration. And in those cases, the courts, and you'd be splitting from them to find that one was insufficient. In the Sixth Circuit and in the Seventh Circuit, Seventh Circuit Loom and the Sixth Circuit, it was the Abner decision that the second motion for reconsideration was not sufficient to toll the statute of limitations, the jurisdictional period for filing an appeal, but the first one was. And so, I mean, there have been reconsiderations in this program and in the Longshore Act under those regulations for 40 years. And those regulations were written specifically in 1987 in response to ICC versus Brotherhood of Locomotive Trainment. That's why they wrote them. Following a decision by the Seventh Circuit in a case called Arch Mineral versus Director, where it got to be a little confusing, as it is here, but it shouldn't be confusing anymore. Well, your petition says, refers to the order, quote, issued on February 25th, 2013, affirming the decision and order of the Benefits Review Board dated September 27th, 2012. But the February 25th, 2013 order does not affirm. It doesn't do what your petition for review says it does. It simply denied the motion for reconsideration. Well, I don't see what difference it makes. You know, in Betty B, you had to take one or the other. There were two appeals. And the thing is that we can play these word games with this, and I think it's inappropriate. I don't see why the word game is going to decide jurisdiction. Counsel, counsel, counsel. I know you're in advocacy, but be very careful. The court is not playing games with you. I stepped over. I know. But I just want to be careful. Go ahead and argue your case. In Darby versus Cisneros, the Supreme Court very clearly said this is not a game of tricks. They described what this is for. You know, the Benefits Review Board used to use a different approach, and that's the one you liked in Betty B. Then they changed the style. They didn't change anything else. They changed the style of their denial of reconsideration from a statement that reconsideration was granted, but then the relief was denied to a statement that it was denied. It's a purely stylistic change. It makes no difference. These are all argued on the merits. The reconsideration is on the merits on the very issues that were brought up to this court. And I don't know. We can write it differently, but I don't think it should matter. All right. Unless there are further questions about jurisdiction, maybe I'll proceed on the merits. Let me go to the question of waiver. We've raised two significant issues here, one of which is the validity of 725-465B, which is the regulation requiring the administrative law judge to get the Department of Labor's permission to dismiss an employer. And the other is whether collateral estoppel applies in this case. The Department of Labor's waiver argument, I'm not going to spend a lot of time on it, but I think it's really not a valid argument in any respect. They raised it on both accounts. This is not a case where there was any requirement that, or even possibility that these arguments or these points could have been raised in a response of pleading. They happened later. Things happened later. Department of Labor raised issues, the 456 issue, in briefs. We responded in the brief. I don't know how you could have done it any faster. With respect to the collateral estoppel issue, as soon as the decision, the claimant, the widow's claim said she wasn't interested in pursuing her case, then that meant it was final. And so what we said was that, at that point, there was a, the requirements of collateral estoppel, the principles of collateral estoppel, attached to the other pending case. And the letters crossed in the mail. And so it was like, you know, the time for appeal ran out on the 30th. I don't have the dates. It's like, you know, a month or two in here where I suppose you could, if there was some kind of law, some kind of case, that would have required us to do something in some particular period of time, we could talk about it. But I think we were pretty reasonably timely in all of these things. And principles of waiver clearly would not apply in these cases. It's just an opportunity that the Labor Department does in all these kinds of cases to give the courts a way to get out of having to decide the underlying issues. We do it all the time. And it's inappropriate here, and I think it's inappropriate. Now, on the 456 issue, this regulation would last for about five seconds in the Supreme Court, and that should be its life here. This is a case, this is a situation where the Department of Labor took away from the the right to decide whether to dismiss on grounds of collateral estoppel. And the regulation says he can't do it. Remember, I just got a decision yesterday where an administrative law judge found that, in this circuit too, you may see it, an administrative law judge found the employer wasn't responsible. And the ALJ said, well, I can't dismiss the case. So we're still in a case, even though we have a finding on the record that we're not responsible. And it award benefits too. And that's what happened essentially here, although we had, you know, an adjudicated issue on collateral estoppel and on the responsible party issue. So you have a regulation, and Butts v. Economy, the Supreme Court's decision, its description and the APA's specific provisions are dispositive on 456. This regulation cannot stand. And there's no virtue to it in any way. And so let me go on to the estoppel issue. Let me go on to collateral estoppel. You know, there was a reason why the widow's claim was denied and the minor's claim was approved. Because the widow's claim had the medical evidence relating to the terminal illness of this man. It had lots more, much better evidence. Parliament of Labor put strict limitations on evidence for black lung cases. And doesn't let you get out of it very easily, even though they told the D.C. Circuit they would. But what happened is that this man had a disease, nothing to do with coal mining. It caused the reaction of his lungs, caused kidney failure, caused heart failure. It's called familial amyloidosis. It is well-established and it is the basis for the denial of the widow's claim. He didn't die, nor did he have any kind of black lung disease. But in the minor's claim, we didn't have this evidence. It was perfectly appropriate for us to come forward on the basis of this. And the minor and the widow in this court has held it. In Boyd v. Stevenson, it's held it. And the Supreme Court held it. In Sealand v. Gaudette, that a husband and a wife in a situation like this particularly are tied by privity. And therefore, you don't even need to get the non-mutual, which is permissible and would apply here too, non-mutual offensive collateral estoppel. Ordinary garden variety collateral estoppel would apply here because there is clear privity between a husband and a wife in connection with a worker's compensation claim like this. And all of the requirements in Pond Creek, all of the requirements in the Villain decision in the Seventh Circuit, all of the requirements in Park Lane Hosiery, which is a non-mutual offensive collateral estoppel case, are met. The parties, the Department of Labor says the minor didn't have a fair chance to litigate the widow's claim because he was dead. Of course, that's kind of cute but irrelevant because the widow was in privity with her husband. And she had every opportunity to litigate that case. And let me say that the Labor Department's first recourse, they say that she didn't have any interest in the case. Well, she did have an interest in the case if she was involved with the estate, which I'm sure she was, because she was served on everything. The Department of Labor's first recourse in the case of an overpayment is to go after the estate. They didn't do that. They just said, we're just going to force the employer to litigate this for the next five years. And it's only $1,700 and these issues are important and that's why we're here. But it seems like a kind of wasteful decision on the Department of Labor, especially since they made the decision, this is all of their own making. They decided they didn't want to go after the estate. Well, you know, I can understand that, but the law requires them to do it. The law does not require them to go chase after an employer for five years and litigate a case on half a record, which is what they did. Why was there the delay in raising collateral stop? Well, I mean, the delay was maybe 45, 60 days. You call it a delay. We had to do a brief, you got to put it on the schedule. You know, it wasn't late. It was raised before the agency. I mean, there was no delay, really. I suppose, you know, it's not like five years or the kinds of cases the Labor Department cites where you have long periods of time or you wait until a decision is final. Now, they're the final decision and our motion crossed in the mail. We didn't wait for anything. I mean, I can't imagine that you can make a believable case that we were dilatory in pursuing that issue. I really don't see it. They may tell you it's different, but that's all I have. All right. Thank you, Mr. Solomon. Ms. Hurley. Okay. May it please the Court, my name is Sarah Hurley, and I represent the Director, Office of Workers' Compensation Programs, United States Department of Labor. I'd just like to briefly address the jurisdictional question here. It is a matter of black-letter law that you can't appeal a summary order that denies reconsideration. And here Eastern's petition on its face appears just to do that exact thing. They're only appealing the BRB's February 25, 2013 order denying recon. But I think the Court's overarching concern here is whether Eastern's petition complied with Federal Rule of Appellate Procedure 15, which is concerned with whether the petition for review adequately specified the order to be reviewed. And an inexact specification is not fatal if the petitioner's intent to seek review of a specific order can be fairly inferred from the pleadings or other contemporaneous findings, and the respondent is not misled by the mistake. And I think here we have to concede that we were not misled here. When Eastern did file its petition, it did attach both of those orders, so we knew that they were appealing both of them, and we weren't misled. So I think that the Court has jurisdiction here. Thank you. Now, to the merits of the case, Your Honors, we're here today in an appeal which Eastern is actually requesting relief from its own self-inflicted wounds. Now, Eastern first argues that A.L.J. Miller was wrong to issue a final decision on the merits in the minor's claim, but Eastern never made this argument to A.L.J. Miller despite the fact that three months before he issued his decision awarding benefits to the minor, he specifically issued a procedural order to the parties, including the employer, that requested input as to how the case should proceed, and Eastern ignored A.L.J. Miller's order and, in essence, acquiesced to his issuing a decision on the merits in the minor's claim. And Eastern also argues that A.L.J. Miller should have applied collateral estoppel to deny the minor's claim based on findings made by A.L.J. Turek in the survivor's claim three months before. But Eastern didn't alert A.L.J. Miller to its collateral estoppel argument until after A.L.J. Miller had adjudicated the minor's case and awarded benefits. Now, Eastern was represented by the same counsel in both the minor's and the widow's claim, and there was no excuse for them not alerting A.L.J. Miller at the earliest opportunity. How do separate A.L.J.'s get assigned the same matter? It doesn't happen. It happens not that often. Usually we try and keep the widow's and the minor's claims together, but at this time, for some reason, they were separated. You don't know the reason? I don't know the reason. I'm sorry. I don't know the reason why it did. It does happen sometimes that they're on separate tracks, and here they were. The respondent could have fixed that, could he not? Well, I think it probably had gone too long for us to really. No, when I say the respondent, I mean the employer or the responsible party. Maybe request that both claims be fixed. Yeah, consolidation. Yeah, I think you're right. Actually, you probably are right. Is there any reason they couldn't have? They probably could have. Sure, they had the opportunity. Same lawyer handled both cases. Exactly, exactly. If you lost the first one, why would you want to do it? Take your chance on another one. I'm just saying. It's true. But in any event, the substance of the two arguments that Eastern presents in this appeal have no merit. Okay, Eastern first is challenging the validity of our regulation 725465D as contrary to the Administrative Procedure Act, and Section 725465D allows an ALJ to dismiss a claim prior to a final adjudication of eligibility when a claimant or representative fails to attend a hearing or comply with a lawful order. But before an ALJ may summarily dismiss due to a claimant's inaction, Section 725465D provides that the ALJ must obtain the Director's consent to dismissal in cases where the Black Long Disability Trust Fund has paid the claimant interim benefits. And that's exactly what happened here in this minor's case. We had paid this minor benefits. And a final adjudication of eligibility determines who is responsible to reimburse the trust fund. Therefore, the Director has to consent to any kind of summary dismissal for cause. We have to ensure that we receive a complete adjudication of our interest and preserve our opportunity to recoup expenditures from the trust fund. Now, Eastern argues that the regulation violates the APA's grant of decisional independence to the ALJ. But Eastern didn't raise this argument before the ALJ or even in its opening brief before the BRB, and so it's waived this argument. And the ALJs actually did not rely on this regulation at all in allowing the minor's case to proceed. So the regulation played no role in the ALJ's decision-making. And in any event, Section 725465D does not interfere within ALJ's decisional independence. It simply ensures a complete adjudication of the Director's interest where he has a direct financial stake in the case by virtue of having paid interim benefits. By giving the Director the approval rights before a claimant's inaction can cause a summary dismissal, the regulation merely ensures that adjudication on the merits will occur when needed. The regulation does not interfere with the ALJ's ability to render an impartial decision nor affect the final decision itself. It doesn't direct the ALJ to rule for the Director or for any party. Rather, it only requires some final determination on the merits when a claimant fails to timely act, and the trust fund has paid benefits. Now, as to the collateral estoppel argument, Eastern argues that the award in the minor's case is barred by collateral estoppel. But Eastern didn't raise this argument at the earliest opportunity before ALJ Miller, so Eastern has waived it. And Eastern's tardy assertion of its defense, it was raised only after ALJ Miller had awarded benefits, undercuts the whole purpose of collateral estoppel. In any event, Eastern can't prevail on its collateral estoppel defense because all the elements have not been met here. Eastern cannot establish that the parties against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue of pneumoconiosis in the widow's claim. The deceased minor was not a party to his wife's survivor's claim, and she did not act as his fiduciary in prosecuting her claim because the minor had no protectable interest in her survivor's benefits. And the Director, who was Eastern's real party opponent here, did not have a full and fair opportunity to litigate the issue because we agreed with ALJ Turek's denial of survivor's benefits, but on different grounds. Therefore, the Director wasn't aggrieved by ALJ Turek's decision and had no incentive to appeal his finding of no pneumoconiosis in the survivor's claim. And that's all I have, unless you have any questions, Your Honor. Thank you very much, Counsel. The government has a lot of misleading things to say and a lot of things that are just not accurate or true. First of all, the motion to dismiss was made under the ALJ's regs, not under the BRB regulations, 29 CFR Part 18. And that's where it says you can dismiss on the same grounds as summary judgment in a Federal District Court. The Department of Labor argues that we didn't raise it in time. Well, what was in time? Who says what's in time? You know, a month? Two months? We raised it. Administrative law judges usually take years to issue decisions. We raised it at the same time, as it turns out, that the administrative law judge's decision was crossing in the mail. We raised it right there. And he said he didn't have jury. He wasn't going to consider it. So we filed it timely for reconsideration. You could not have raised it earlier, unless there was some obligation someplace to raise this issue immediately after a decision came out. I mean, you know, we represent clients. We've got to go to them. We've got to ask them what they want to do. We've got to write up the case for them. Then we've got to write up the arguments. It takes a couple of weeks, a couple of months. That's not unreasonable, and that's not waiver. And that's what happened here. Now, as far as, you know, the collateral estoppel issue and how the Department of Labor doesn't have any interest, the fact of the matter is the Department of Labor's regulation violates the APA, period. And so whether they don't think it's fair, I think that's just too bad. The violation of the APA is so apparent, it is so clear, it is so obvious if you read the Supreme Court's decision in Butts, but you don't even need to read it. How does the regulation interfere with judicial independence? Pardon me? Does the regulation interfere with judicial independence? Sure does. How would you like it if there was a rule that said, you know, you can decide this and this and this, but you can't decide that unless me, the party, agrees that you can do it, that you can decide it in a particular way. That's interference. That's not a merits decision, though. That's just to make sure the party is not removed from the case. That's not a merits decision. Your Honor, they're all merits decisions. This is a merits decision, whether we're responsible. That's on the merits, and that's what this regulation prohibits. It can't be something different. You can't candy coat this. This is an invalid rule. Could the director recover the payments from the estate? Yes, they're supposed to. In the absence of a final judgment? No. So the case had to go to final judgment. No, it didn't. Okay. I didn't understand your two answers. Well, you know, the thing is that if the administrative law judge could have decided it, and if the administrative law judge could have relied upon the Department of Labor can't go pursuing this kind of thing, then, yeah, they would have had a final decision. And then if the regulation wasn't there, and if they had had a final decision, then they could have gone after the estate. As a matter of fact, they're supposed to go after the estate first, not push litigation. Can you imagine how complicated and difficult it is if every time the Department of Labor didn't even go, look, it's $1,700, so this isn't going to break most estates. I know that these people are not rich, but, you know, money may have been there. They didn't even look for it. They just decided they wanted to go litigate for the next five years with the coal company. Let me suggest one other thing. You've asked for a brief on the jurisdictional question. You know, I've got a client that's coming out of bankruptcy here. You know, if you could find it in your hearts to withdraw. You think we have hearts up here? Yeah, to rescind that order. Counselor, you read my mind because we're going to do a little sidebar. Hold on, if you will, with that. You have anything further? No. Okay, hold on for a second. Counselor, you see, we do things fast sometimes, and sometimes favorable to you. Rarely. We are going to suspend our order asking for briefs here, and hopefully it will help your weekend so you don't need to file briefs on the jurisdictional matter. With that, I thank both counsel. We'll come down and greet counsel.
judges: Roger L. Gregory, Stephanie D. Thacker, Andre M. Davis